# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Karla Malanga, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : No. 1908 C.D. 2017 | |
| | : Submitted: June 15, 2018 | |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  August 24, 2018**


Karla M. Malanga (Claimant) petitions *pro se* for review of the December 1, 2017 order of the Unemployment Compensation Board of Review (Board). The Board affirmed the decision of a Referee, denying Claimant unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law[1] (Law) due to willful misconduct.  Claimant's employment was terminated by Stroudsmoor Resort (Employer) after she sent what was determined to be a harassing and offending text message to her co-worker.  For the reasons set forth below, we now reverse.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his or her unemployment is due to discharge for willful misconduct connected to his or her work.  43 P.S. § 802(e).

Claimant filed an initial claim for unemployment compensation with the Department of Labor and Industry (Department) on August 3, 2017 following her dismissal by Employer, where she had worked full-time as team production leader in the floral department. (Record Item (R. Item) 2, Internet Initial Claims.) On August 23, 2017, the Department issued a Notice of Determination finding Claimant ineligible for unemployment compensation benefits. (R. Item 5, Notice of Determination.)

Claimant appealed the Notice of Determination and a hearing was held before a Referee on October 11, 2017. (R. Item 9, Transcript of Testimony (H.T.).) Claimant appeared at the hearing, as did Employer's Human Resources Manager (HR Manager) and the floral department designer to whom Claimant sent the text message (Designer). The Referee issued a decision and order on that same day, concluding that Claimant was ineligible for unemployment compensation. (R. Item 10, Referee Decision and Order.) The Referee made the following findings of fact:

1. [Claimant] was last employed as a full-time team production leader for Stroudsmoor Resort, beginning on September 13, 2013, with a last day worked of August 2, 2017.

2. On July 30, 2017, a co-owner held a dinner for members of the floral department, which [Claimant] worked in, in an effort to address concerns of the department.

3. After the dinner on July 30, 2017, [Claimant] sent text messages to a coworker inclusive of notifying the coworker that no one trusts her and that she had offended coworkers.

4. The recipient of the text messages from [Claimant] notified [Employer] of her concerns of the contents of

2

the text messages and that she was being harassed by [Claimant].

5. On August 2, 2017, [Employer] discharged [Claimant] for the text messages sent to her coworker on July 30, 2017 that were harassing and offending.

(R. Item 10, Findings of Fact (F.F.) ¶¶ 1-5.) Claimant appealed the Referee's decision to the Board. (R. Item 11, Claimant's Petition for Appeal.)

On December 1, 2017, the Board issued a decision and order affirming the Referee, and adopting and incorporating the Referee's findings of fact and conclusions. (R. Item 12, Board's Order.) In its order, the Board stated, "[t]he Board finds the text message to be unwarranted and that it was sent with the intent to harass and make the coworker uncomfortable." (*Id*.) Claimant then petitioned this Court for review of the Board's order, contending that her actions did not constitute willful misconduct.[2]

The question of whether a claimant's actions constitute "willful misconduct" is a question of law subject to this Court's plenary review. *Rossi v. Unemployment Compensation Board of Review*, 676 A.2d 194, 197 (Pa. 1996). Willful misconduct is defined as: (i) wanton or willful disregard for an employer's interests; (ii) deliberate violation of an employer's rules; (iii) disregard for standards of behavior which an employer can rightfully expect of an employee; or (iv) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Caterpillar, Inc. v. Unemployment Compensation*

---

[2] Our review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Davila v. Unemployment Compensation Board of Review*, 926 A.2d 1287, 1289 n.3 (Pa. Cmwlth. 2007). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *On Line Inc. v. Unemployment Compensation Board of Review*, 941 A.2d 786, 788 n.7 (Pa. Cmwlth. 2008).

*Board of Review*, 703 A.2d 452, 456 (Pa. 1997). The employer has the burden to demonstrate that the claimant has engaged in willful misconduct; if an employer meets this burden, the burden then shifts to the claimant to demonstrate that the claimant had good cause for the violation of this employer's policy by showing that the actions resulting in non-compliance were reasonable under the circumstances. *Rossi*, 676 A.2d at 197; *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011).

Here, Claimant asserts that the new manager, with whom she had worked previously and with whom she did not get along, was conducting discussions about department processes with Designer, a co-worker of Claimant, and excluding Claimant from these discussions. Claimant contends that Designer falsified and embellished the nature of her text message in an attempt to have Claimant dismissed and to assume her position as team leader. She further asserts that Employer was seeking a way to eliminate her position and was looking for an excuse to terminate her employment.

At the hearing, the HR Manager testified that Claimant's negative attitude toward Employer was an ongoing issue and stated that the floral department had experienced changes and difficulties since the death of its 30-year manager, and the recent replacement with a former employee. (R. Item 9, H.T. at 5.) She indicated that Claimant had expressed concerns with working under the new manager, and that both she and Employer's owner had counseled Claimant that she had to try to get along with her. (*Id.* at 6.) The HR Manager stated that in an attempt to create camaraderie within the department, Employer had hosted a dinner, and that after the dinner, Claimant had observed Designer talking privately to the new manager; she stated that later that evening, Claimant sent the offending message to Designer,

4

which she characterized as "a very bullying type of message." (*Id.*) The content of the text message is as follows:

> Wel[l], sorry to say it's probably not going to work even thou[gh] we want it to. The [other girls in the department] come to me uneasy - and uneasy with you? - why is that? I reassured them just adjustment - but blew me away. Feeling is still uneasy, you can copy and report to [the new manager] - I do not care – no one trusts you – n[o]t me either, at this point – girls seen still to[o] much weirdness – All would be nice if it was gonna happen the way they say – Conversations that you had with [ ] were overheard by coworkers and offended them – what they heard that you have said – you!!! [T]hey lost respect for you – sorry to say – so going forward it's going to be strained for all of us – I am loyal to [former manager, now deceased and her son] – they will know or do know I might say – so you have to live with that – they hate this and not forgiving anyone involved with that – just so you know – see you next time – I am yet again hurt – I am true to [former manager] – no one else! Marsha [interim manager] knows the truth too – She said to say goodnight :)

(R. Item 3, Employer Separation Information.) The HR Manager stated that during the fall of 2016 when Designer was off work recovering from a car accident, Claimant had sent other unwarranted text messages to Designer with false information regarding Designer's job security, and that such messages created "additional drama before [Designer] even came back to work." (R. Item 9, H.T. at 7.)

Designer testified that the dinner hosted by Employer's owner had been a way of thanking the floral department employees and of letting the staff know that everyone's job was safe and secure, and the department could move into the rest of the work season without strain. (H.T. at 9.) She stated that she had never responded

5

to the text message or to other text messages that Claimant had sent and that she would not have felt comfortable working with Claimant after the last text message. (*Id*. at 11.) In a report she provided to Employer after Claimant was discharged from her employment, Designer stated that as she read the text message, she was "both angry and sick to my stomach," and that in the text, Claimant "insinuated that no one trusts me, that I make the other girls feel uneasy, that [deceased manager and her son] aren't forgiving anyone going along with the new changes." (R. Item 3, Employer Separation Information.)

Claimant provided a range of explanations as to why she sent the text message and what she intended to convey in the message. In her initial internet claim, she stated that she "lashed out at a coworker that I thought was also a friend, when I found out that she was going behind my back conspiring…she took my words to the manager, who was looking for a way to get rid of me, saying I was threatening her…I was not. I was hurt, angered and they used my words against me." (R. Item 2, Initial Internet Claims.) She testified at length as to her objections to the hiring of her former colleague as the new manager. She stated: "[a]s far as the text that I wrote [Designer], the bottom line is I didn't feel comfortable, I felt betrayed myself by her and a coworker, and that, that to me what was in there is no harassment, no threatening, you know, none of things I was terminated for. (*Id*. at 14.) She also testified that "the bottom line is what I was saying to [Designer] was I wasn't happy with how things were going down. It was uneasy." (*Id*. at 16.) Claimant offered into evidence a text she sent Designer one day after the offending text was sent, in which she offered an apology "if [Designer] misinterpreted [her] texts as is often the case when words are misplaced or misspelled, and not properly punctuated." (R. Item 9, Exhibit.) In her appeal from the Referee's determination, Claimant

6

described her previous interactions with Designer and indicated that Designer seized upon the appointment of the new manager to create a situation that would affect Claimant and her position in the floral department, stating, "[t]his is what I addressed to her, this is what I was talking about, I was not harassing, not bullying, no threatening. I was stating how I felt and how she made me feel after all she has done. The entire department witnessed her behavior, [saw] her actions…." (R. Item 11, Claimant's Petition for Appeal.) In a letter written to Employer following her dismissal, Claimant indicated that she had knowledge that Designer had been seen meeting with the new manager on other occasions [prior to the dinner hosted by Employer], that Designer had been overheard complaining and "talking SMACK" about other employees, and that she was attempting to find favor with the new manager. (R. Item 9, Attachment.) No evidence was introduced that Designer had complained to Claimant about prior text messages or that Employer had instructed Claimant that prior messages were inappropriate or that she was not to send text messages to Designer.

The Referee found, and the Board adopted the Referee's finding, that Claimant's assertions that the text message was not bullying were not credible. (R. Item 10, Referee's Decision, Reasoning.) Nevertheless, we conclude on review that Claimant's text message, however inartfully composed, did not by itself rise to the level of willful misconduct. Moreover, Claimant was in fact the floral department team leader and as such, her comments reporting feedback received from other department employees might well be viewed as the exercise of her own managerial prerogative. Employer clearly had the right to terminate Claimant's employment; the record is clear that she was experiencing great difficulty with departmental changes and had made it known that she felt the manager chosen to replace her

7

previous manager was a person with whom she could not get along; she also acknowledged that she was provoked by the Designer's attempts to gain favor with the new manager. However, Claimant did not threaten to harm her colleague; although it was highly critical, her text cannot be construed as vulgar, profane or abusive. Claimant's employment was not terminated for the violation of a specific rule; however, we have established that there are certain standards of behavior which an employer has the right to expect of its employees even though they are not expressly set forth in an agreement or rule.[3] *See Orend v. Unemployment Compensation Board of Review*, 821 A.2d 659 (Pa. Cmwlth. 2003). Here, we do not find Claimant's conduct, absent some prior instruction or warning from Employer, to be so obviously "beneath the standards" or so inimical to Employer's best interests that benefits may properly be denied. *Biggs v. Unemployment Compensation Board of Review*, 443 A.2d 1204, 1206 n.3 (Pa. Cmwlth. 1982). Accordingly, we hold that Claimant's actions did not rise to the level of willful misconduct, and we reverse the order of the Board.

**JAMES GARDNER COLINS, Senior Judge**

---

[3] The record includes a list of work rules maintained by Employer, the violation of which will result in a written warning or termination. (R. Item 3, Employer Separation Information.) These include the use of inappropriate or foul language on company property and poor attitude and disrespect shown toward an employee's job, company, guest or fellow employees. (*Id.*)

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Karla Malanga,                          :
                                        :
            Petitioner                  :
                                        :
        v.                              :  No. 1908 C.D. 2017
                                        :
Unemployment Compensation               :
Board of Review,                        :
                                        :
            Respondent                  :

# **O R D E R**


AND NOW this 24th day of August, 2018, the order of the Unemployment Compensation Review Board in the above-captioned matter is REVERSED.


_____
**JAMES GARDNER COLINS, Senior Judge**